AF Approval ______ Chief Approval ______

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v. CASE NO. 8:16-cr-354-T-23TGW

CARLOS SARABASA COBAS

# PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by A. Lee Bentley, III, United States Attorney for the Middle District of Florida, and the defendant, CARLOS SARABASA COBAS, and the attorney for the defendant, Joseph Torres, mutually agree as follows:

## A. Particularized Terms

1. Count Pleading To

The defendant shall enter a plea of guilty to Count One of the Indictment. Count One charges the defendant with conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349.

2. Maximum Penalties

Count One carries a maximum sentence of 30 years' imprisonment, a fine of up to $1,000,000, a term of supervised release of not more than 5 (five) years, and a special assessment of $100. With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offense,

and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense(s), or to the community, as set forth below.

3. Elements of the Offenses

The defendant acknowledges understanding the nature and elements of the offense with which defendant has been charged and to which defendant is pleading guilty. The elements of Count One are:

First: Two or more persons, in some way or manner, agreed to try to accomplish a common and unlawful plan to commit bank fraud, as charged in the indictment; and

Second: The Defendant knew the unlawful purpose of the plan and willfully joined in it.

The elements of a violation of 18 U.S.C. § 1344 (bank fraud) are that:

First: The defendant executed or attempted to execute a scheme to defraud a financial institution or to obtain money, assets, or property from a financial institution, by means of false or fraudulent pretenses, representations, or promises relating to a material fact;

Second: The defendant acted willfully and with intend to defraud;

Third: The false or fraudulent pretenses, representations, or promises were material; and

Fourth: The financial institution was federally insured or federally chartered.

4. Counts Dismissed

At the time of sentencing, the remaining counts against the defendant, Counts Two through Five, will be dismissed pursuant to Fed. R. Crim. P. 11(c)(1)(A).

5. No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

6. Mandatory Restitution to Victim of Offense of Conviction

Pursuant to 18 U.S.C. § 3663A(a) and (b), defendant agrees to make full restitution to the victims of the conspiracy to defraud. The total amount of restitution and recipients will be determined at the time of sentencing.

7. Guidelines Sentence

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement. The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to

withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

8. Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

9. Cooperation - Substantial Assistance to be Considered

Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require. If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG §5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both. If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion for a reduction of sentence within one year of the imposition of sentence pursuant to Fed. R. Crim. P. 35(b). In any case, the defendant understands that the determination as to

whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

10. Use of Information - Section 1B1.8

Pursuant to USSG §1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide during the course of defendant's cooperation and pursuant to this agreement shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG §1B1.8(b).

11. Cooperation - Responsibilities of Parties

a. The government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation and any other mitigating circumstances indicative of the defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime. However, the defendant understands that the government can make no representation that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

b. It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person,

or should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

(1) The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

(2) The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement. With regard to such charges, if any, which have been dismissed, the defendant, being fully aware of the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have heretofore properly been returned by the indictment of a grand jury, does hereby agree to reinstatement of such charges by recision of any order dismissing them or, alternatively, does hereby waive, in open court, prosecution by indictment and consents that the United States may proceed by information instead of by indictment with regard to any felony charges which may be dismissed in the instant case, pursuant to this plea agreement,

and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

(3) The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4) The government may use against the defendant the defendant's own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

(5) The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire plea agreement null and void.

12. Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C.§ 982(a)(2)(A), whether in the possession or

control of the United States, the defendant or defendant's nominees. The assets to be forfeited specifically include, but are not limited to, a money judgment in the amount of $123,225.80, representing the amount of proceeds obtained as a result of the offense charged in Count One. The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government. Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees that the United States shall, at its option, be entitled to the forfeiture of any property (substitute assets) of the defendant up to the value of the money judgment. The defendant further agrees that the United States is seeking a money judgment because, as a result of the defendant's

actions, the criminal proceeds cannot be located despite the exercise of due diligence. The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

The defendant agrees to take all steps necessary to identify and locate all substitute assets and to transfer custody of such assets to the United States before the defendant's sentencing. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control directly or indirectly, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to any substitute assets before the defendant's sentencing. In addition to providing full and complete information about substitute assets, these steps include, but are not limited to, the surrender of title,

the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

13. Removal - Notification

The defendant has been advised and understands that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a citizen of the United States. Under federal law, the offense to which defendant is pleading guilty may be a removable offense. Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including the defendant's attorney or the district court, can predict to a certainty the effect of the defendant's conviction on the defendant's immigration status. The defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences that may result from the defendant's guilty plea, even

if the consequence is the defendant's automatic removal from the United States following completion of the defendant's sentence.

**B. Standard Terms and Conditions**

1. Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. The special assessment is due on the date of sentencing.

The defendant understands that this agreement imposes no limitation as to fine.

2. Supervised Release

The defendant understands that the offense to which the defendant is pleading provides for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3. Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4. Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5. Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6. Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7. Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United

States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8. Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9. Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10. Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and

defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as

the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11. Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth below are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

FACTS

From at least in or around January 2015, through and including the date of his arrest on or about August 9, 2016, Carlos Sarabasa Cobas and others engaged in a conspiracy and scheme to defraud the United States and financial institutions by obtaining moneys of financial institutions by false pretenses. The conspirators did so by negotiating money orders and checks that they stole from various United States Postal Service (USPS) mail collection boxes in several counties in the Middle District of Florida, including Hillsborough, Pinellas, Pasco, Polk, and Sarasota counties. The conspirators used "fishing" devices, which they constructed with a combination of duct tape, string, and metal objects, to burglarize the mailboxes. The conspirators discarded the unwanted mail and kept the money orders and checks.

The conspirators proceeded to wash or alter the original payee names from the "pay to" lines of the financial instruments and replaced the original names with their own. They also often washed or altered the name of

the purchaser, the amounts of payment, and the "note" section of the financial instruments, making it more difficult to identify the actual purchaser. Once this process was complete, the conspirators deposited the stolen money orders into accounts under their control at various JPMorgan Chase Bank, SunTrust Bank, Wells Fargo, Grow Financial Credit Union, Suncoast Bank, CitiBank, Bank of America, GTE Federal Credit Union and Regions Bank branches and other financial institutions. Once the cash from the money orders and checks became available, the conspirators withdrew and shared in the proceeds. Ultimately, many of the victims filed complaints with the U.S. Postal Service or their local police departments, and many of the financial institutions determined that the money orders and checks were fraudulent.

For example, on or about March 20, 2015, a USPS investigator was contacted by Valley National Bank regarding a complaint made by the Crossing Church, Inc. The Crossing Church reported that it had deposited approximately 40 checks into the blue USPS mailbox at the Riverview, Florida, Post Office, and that five of these checks had been stolen. Valley National Bank provided the names of the banks where the five checks had been cashed. The USPS investigator spoke with a representative of Crossing Church, who confirmed that Crossing Church had not sent checks to any of the individuals to whom the accounts belonged.

a. One of the checks, in the amount of $5900, made payable to CapinCrouse LLP in typewriting, was deposited at Regions Bank, into an account

ending in -3602. The account was in the names of O.R. and M.S. The check was dated January 29, 2015, and it was for "Progressive billing for audit services through 12/31/14." The check was endorsed by M.S. Investigators obtained video images from Regions Bank. The images showed the check being deposited on or about January 30, 2015, at the Regions Bank branch located at 6297 Waters Avenue, Tampa. The images show a white Ford Expedition belonging to Sarabasa Cobas's girlfriend, M.G. The driver, who deposited the check, was Sarabasa Cobas.

b. Another check issued by The Crossing Church, dated January 29, 2015, was deposited into a Bank of America account ending in -9803 in the name of A.G.R. The check was made payable to Digitech of Lakeland, Inc., in the amount of $1500. The check was deposited on or about February 2, 2015. The check was not endorsed. Three additional checks that appear to be fraudulent were deposited into the account, on or about the following dates: January 26, 2015, February 9, 2015, and February 11, 2015. The total amount of fraudulent checks deposited into the account was approximately $3322.23. Sarabasa Cobas provided or caused these checks to be provided to A.G.R.

c. On or about February 2, 2015, J.D.M. deposited a check issued by The Crossing Church, dated January 29, 2015, into a Suncoast account ending in -8764 in the name of J.D.M. The typewritten check was made payable to United Health Care in the amount of $1788.67. The check was not endorsed. Sarabasa Cobas provided this check to J.D.M. J.D.M. deposited a

total of $6932.37 worth of stolen and altered money orders, which he received from Sarabasa Cobas, into his bank accounts at Suncoast and GTE Federal Credit Union.

d. A fourth check issued by The Crossing Church, dated January 29, 2015, was deposited into a GTE Federal Credit Union account ending in -1196 in the name of V.C.T. The check was made payable to Republic Waste Services in the amount of $1527.08. The check was not endorsed. Sarabasa Cobas gave this check to V.C.T.'s husband, who gave it to V.C.T to cash.

e. The fifth check issued by The Crossing Church, dated January 29, 2015, in the amount of $528.46, was cashed at Stop & Pick at 4801 North Lois Avenue in Tampa on February 2, 2015. Sarabasa Cobas either cashed this check or caused it to be cashed.

On or about April 16, 2015, USPS inspectors received a report from the Carrollwood Post Office, located in Tampa, Florida, that it had found two fishing devices in one of their blue USPS mailboxes. USPS investigators installed a surveillance camera on or about April 17, 2015, to watch the mailbox. The surveillance footage revealed that on or about April 19, 2015, beginning at approximately 10:25 P.M., a white Ford Expedition belonging to Sarabasa Cobas's girlfriend, M.G., stopped at the blue USPS mailboxes three separate times for a period of two to four minutes each time. On or about April 20, 2015, the Carrollwood Post Office reported that it had found three more fishing devices

in their blue collection box. The devices were recovered and investigators determined that the devices appeared to be similar to the ones previously recovered.

Based on the foregoing and other evidence, investigators obtained a federal search warrant for the residence of Sarabasa Cobas, located in Seffner, Florida. During the execution of the search warrant on or about April 28, 2015, several additional items of evidence were recovered from the white Ford Expedition, such as a fishing device, duct tape, shoelaces, batteries, Netflix DVDs. There were approximately 12 torn personal checks in the trash outside the house. In the kitchen, there were approximately 11 Amscot money orders, and one Western Union money order. Five of the Amscot money orders had already been washed of ink. The torn personal checks appeared to have been unsuccessfully washed of ink.

Sarabasa Cobas personally controlled an account ending in -0982 at Regions Bank. This account received one Fidelity Ex money order, seven Amscot money orders, and six checks that appear to be fraudulent. The total amount of fraudulently obtained funds deposited into the account was $10,563.54.

Sarabasa Cobas also personally controlled an account ending in --1040 at SunTrust Bank. The Sarasota County Sheriff's Office received complaints of stolen mail in or around July and August 2015. Investigators have

identified three Amscot money orders, totaling $410.14, and nine checks, totaling $16,969.05, that were fraudulently deposited into the account.

During the course of the conspiracy, the conspirators deposited or caused to be deposited at least $123,225.80 into at least 14 different bank accounts held in the names of the conspirators. Investigation has shown that these money orders and checks were derived from thefts of USPS mailboxes located throughout the State of Florida. In doing so, Sarabasa Cobas and the conspirators victimized at least ten individuals and businesses.

12. Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

13. Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this 26th day of October, 2016.

A. LEE BENTLEY, III
United States Attorney

Carlos Sarabasa Cobas
Defendant

Megan K. Kistler
Assistant United States Attorney

Joseph Torres
Attorney for Defendant

for Simon Gaugush DCAUSA
Assistant United States Attorney
Chief, Economic Crimes